case number 25-1086 et al. Municipal Energy Agency of Nebraska et al. Petitioners v. Federal Energy Regulatory Commission. Ms. Whipple for the petitioners, Mr. Bechtle for the respondents, and Ms. Gates for the interviewers. Good morning, Council. Ms. Whipple, please proceed when you're ready. May it please the Court. Thank you, Your Honor. I am Peggy Whipple. I'm here for the petitioners today. I'll collectively refer to them as the Colorado Cities, and I have, if allowed, I'd like to reserve two minutes for rebuttal. This appeal is about FERC's failure to do what it said in its own two orders has been its job to do for the past 45 years to ensure just and reasonable rolled-in electric transmission rates. First, to find whether the power pathway, the facility at issue, operates within PSCO, that's an acronym, Public Service Commission Company of Colorado, operates within PSCO's system as an integrated whole. And second, to find whether Colorado Cities' evidence of special circumstances rendered rolled-in rate treatment to them of the power pathway costs inappropriate. Now, the Court's failure to make those two findings, I will call that their primary failure. Whether or not FERC chose to make those findings by employing its 24-year precedent of the Mansfield Five-Factor Test is truly secondary to FERC's primary failure of failing to make those two findings at all. Arguably, FERC could have employed a different or even a new test to make those two findings so long as it provided a reasonable explanation for departing from its own precedent. Now, we have a jurisdictional question here, because as I read the record, you did not raise at the Petition for Rehearing Agency the question regarding the alleged failure of FERC to address the integrated network. It's not there. What you have, Your Honor, is you have, if I may call it, the umbrella term, the label of rolled-in rate treatment. And both the FERC cited that standard itself. It said, for rolled-in rate treatment, I have to make these two findings. And you do have, in our request for rehearing as well as our complaint below, the claimed error that FERC failed to follow its own precedent for rolled-in rate treatment. That is at Joint Appendix 477 in the request for rehearing. And in FERC's November 2024 order, it found at Joint Appendix 438 that it acknowledged that the Colorado cities had pled special circumstances as the exception to rolled-in rate treatment. Your Honor, if I might. You're really stretching it there. I mean, the claim that I'm referring to, I think it's a very specific claim if it was made, that FERC did not make the finding that this is part of an integrated network. You have to raise that in the petition for rehearing. That claim was not raised. Now, what you're doing is what I expected you would do. Well, it's kind of a big sweep we had, and you have to assume that must have been there. But that's not the way we operate. It wasn't there. There are other claims that were preserved. This one was not. Your Honor, I would say that because both of FERC's orders, both the November 2024 order and the March 25 order, because both of those orders spelled out in FERC's own language for rolled-in rate treatment, I must make two findings. Integrated whole and special circumstances render the rolled-in rate treatment inappropriate. I would argue that FERC laid out its own obligation, and surely we can assume that FERC was aware of the content of its orders. No, when you get to the – I'm sorry. No, please. Let me just finish. When you get to rehearing, you have to say they haven't done what even they understand they should have done. That you didn't do. And if you don't do that at the rehearing stage, that's jurisdictional. It's not before us. There are other things you've raised that we properly have to address. But you didn't raise that, and I looked at the record very carefully. I don't see it. I absolutely believe you looked at the record very carefully. And I have to take the position that because FERC spelled it out in both of its orders and because everybody, FERC and the parties, refer to it as rolled-in rate treatment, it includes those two findings. Perhaps an analogy, if we argue that due process has been denied, we all know we're talking about the Fifth Amendment and the Fourteenth Amendment, but I'm not sure that it would be necessary to cite both the Fifteenth and the Fourth Amendment and also spell out what a particular court does in order to assure adequate notice and opportunity to be heard. I think part of the idea here is that the agency needs to understand what the error is, what the alleged error is, so that they can have a chance to speak to it in their hearing order. And if there's no objection that's levied at the level of specificity that would put the agency on notice, hey, here's the failing and here's our answer to it, or here's a failing, oh, boy, we just messed up, then it's not properly preserved for our purposes because the agency wasn't put on notice that this is the nature of the objection that's being made. So even if the agency has some languages in its orders that circle around the general area of what you're seeking to raise before us now, they need to have been told in a petition for re-hearing that here's the error that we see and here's your chance to address it. I understand and accept the court's concern. And I have to say that because the agency so specifically described its duty to make the two findings and because the agency surely read its orders before it signed them and issued them, it seems to me to be certainly an unfair requirement that you've got to tell the agency, oh, by the way, even though you laid out your own duties and I believe you know what your order said, you didn't do it, please try again. I mean, I think that's what this court is for, is to send it back. No, no, no. We've already ruled on the point. The case law here is exactly what the Chief just said. The agency has to be given notice at the re-hearing stage. You can't count what you think happened before that. At the re-hearing stage, you have to say to them, no, no, no, you missed the boat on point X, and we're challenging you now. And that's going to go up to the Court of Appeals if you don't address it on re-hearing. You must do it. And I was surprised. Our case law is very strong on this one with this agency. It has to be done. Very well. Well, in this case, then, what we'll end up with, if that is true, what we'll end up with is a very muddied precedent for not just these parties. I think there are a lot of advocates who say that about a lot of the case law. But here is an opportunity to make it clean and clear. Why don't you give us your arguments on the points that you did preserve, at least as I'm describing it. Well, very well. The FERC did not rule on the special circumstances. And that is, of course, the second prong. But the court acknowledged itself that it had been pled, that the Colorado cities had pled special circumstances that rendered rolled-in rate treatment inappropriate. And the FERC then actually failed to make any finding of special circumstances. And, you know, we're actually, I think, assisted, if you will, by Excel's briefs, pages 22 to 29 of its brief. Excel went to the work to come through the record to find what elements in the record might have satisfied either of those prongs, both the integrated whole and the special circumstances. But we get nothing from that. So, counsel, there's some ambiguity about what special circumstances means. Yes. But in your brief on appeal, at least one way of viewing it, is special circumstances means showing that you'll receive no benefit from the upgrade. Is that a fair description? That would be a special circumstance, yes, of course. And so assume your primary argument below was that you would receive no benefit and that FERC explained in its orders, especially the rehearing order, that there is at least some benefit, reliability, and resilience among other things. Why isn't that effectively a finding that special circumstances don't exist, conceding they didn't use those exact words? I think the primary reason that that was insufficient from the FERC's ruling is they never did find that there were particular benefits to the Colorado cities or, frankly, even particular benefits to anyone on the west side of the  Remember, FERC acknowledged that the Excel, their subsidiary, Piesco, had declared the Power Pathway Project to be for the benefit of its customers in Denver and on the east side of the mountains. And FERC actually made those two findings as well. And all FERC did find is that there are generalized benefits to all of Piesco's customers of reliability and adaptability and that sort of thing, and did not address really Colorado City's three special circumstances, number one being we're clear over on the west side of the mountains, and you've already acknowledged that this entire project is for the benefit on the east side of the mountains, number two being we are not connected to you. You have acknowledged that we take all our power from low-voltage lines, not this high-voltage line. And number three being how can 114 percent increase in our rates over basically two years of time for no showing of benefits, how can that be cost commensurate with the burden? And FERC made no findings in that regard. It just simply did not. They said there were economic benefits, reduced production costs, reduced reserve requirements in addition to reliability, which you have mentioned, and resilience benefits. So it's more than what you just said. That was for all of Piesco's customers. Right. There was no finding of whether or not Colorado City's evidence of special circumstances rendered the rolling in of cost rates to them to be inappropriate. Aren't they effectively saying if you're in an integrated situation like this, the claims that you're making normally are going to fall on deaf ears because it's an integrated? If it's a burden, isn't that right? They're essentially saying that. You can't claim that that is a unique disadvantage to you. That's the nature of the integrated situation, right? Yes, if you have a finding of an integrated system. Remember, we don't have that here. The issue that you forfeited. Yes, okay. That's a problem. And I'm sure your Honor is thinking of paragraph 44, which I would say comes the closest. Paragraph 44 of the original order, that's Joint Appendix 445. That comes the closest to a finding of fact of integration. And I'll quote it. Piesco's system, transmission system, operates as an integrated network, and Power Pathway will become part of that network. There's two problems with that. First of all, it's not a finding of fact because there's no site to any record of evidence and support. In fact, the only site to that paragraph, to the record, is to Colorado City's complaint saying, hey, I'm not going to be connected to the Power Pathway, and I'm not going to get any benefits from it. The second problem is that in that declaration, FERC declares only that Piesco's system, as it currently exists, operates as an integrated network. FERC does not find or even declare that the Power Pathway will, at some future point, be integrated into that part of the network. So it's just the finding is not there, and so we can't build the law on that failure to make the finding. See, my response is your failure to raise the objection in the petition to re-hearing makes it difficult for us to approach the case in the way you're wanting to approach it. I appreciate that. I appreciate that. And, of course, I have to maintain that using the same terminology that FERC itself used was sufficient to alert the court. That's the idea, right? According to Ameren Services Company from this court, the requirement for the specificity in a request for re-hearing is, was the commission alerted to the issues that it would face on judicial review? And since we used the same language that the FERC itself had used, I would have to argue that they were so alerted. This is going to be similar to the prior question, but I think what FERC would also point to is paragraph 11 of the re-hearing order, which says, I'll simplify just a little bit, there's extensive evidence that will improve reliability of the entire network. You might be on the other side of the state, but you're connected to the network. You benefit, case closed. And I just want to give one more chance to understand why that is insufficient. I looked at paragraphs 10, 11, and 14 in that second order, the March 24th order, and the problem with all of those paragraphs is nowhere in any of those paragraphs or the paragraphs it seeks to incorporate by reference from the earlier order, nowhere is there a finding of fact of integrated whole. It's just simply not there. So if we're just looking at was there a finding of reliability benefit to your clients, you don't have an answer specific to that. We're going to go back to the first issue. I just want to make sure I understand. No, I would say, and what you will find in paragraphs 10, 11, and 14 is that general repetition of, well, all of the customers on the system received these generalized benefits. There's nothing about Colorado City's very specific three special circumstances. Thank you. Okay, we'll give you some time for rebuttal. Thank you. Thank you, Ms. Whipple. Mr. Backfield? Yes, good morning, Your Honor. May it please the Court, Sam Backfield for Respondent of the Federal Energy Regulatory Commission. I suppose I'll begin with where opposing counsel left off, the question of whether the system is integrated. There really can be no question that public service operates an integrated transmission system. The petitioners are transmission service customers of public service, and everything that public service says about the new power pathway demonstrates that the power pathway is designed to provide enhanced transmission service for the system. So there's essentially the question of whether or not the power pathway has been integrated yet or will be in some future date is really sort of has no bearing on the particular question of whether the system is integrated or not, nor whether the petitioner, Colorado Cities, receive benefits in transmission service from public service. And, in fact, as to the question of special circumstances, the special circumstances that the commission has described in the past are very different from the circumstances that are present in this case. So as a basic matter, where the commission has found or described special circumstances, these are circumstances where a facility simply does not enhance the transmission system as such. So, for example, a radial transmission line that is only to serve one customer that's unidirectional, that doesn't impact the rest of the system, it doesn't relieve congestion, it doesn't promote resiliency, something like that, or deferred precedent, would be arguably special circumstances. Similarly, a step-up transformer unit that's solely constructed in order to help a particular generation facility get its energy onto the system, that might be an example of an exception to the longstanding policy of rolling in rates for the costs of transmission expenditures. So the reason why the commission has developed this practice, this default practice of rolling in these costs to rates, is because at a certain level the benefits to the system benefit the entire system in a way that can't be disaggregated at a granular level on a customer-by-customer basis. Partly I think this is because of the physics of the system where it's uncertain how things will flow from one moment to another. There is a kind of irreducible uncertainty. And that is part of the reason why this court and others have described a transmission service system as essentially a single machine or a single piece of machinery that operates as a whole. So when a project like the Power Pathway comes online and it enhances the resilience and the capacity of the public service system, when it allows improved reliability, enhanced deliverability, improved voltage stability, et cetera, these are benefits that accrue to all of public service's customers. And that, by the way, is consistent not just with the unrebutted expert testimony that public service submitted in the Gilbert Flores affidavit, but also is consistent with the findings of the Colorado Public Utility Commission, which is charged with promoting the interests of and protecting the interests of Colorado rate payers. And what the Colorado Public Utility Commission found was that this facility, this project, the Power Pathway project, was needed in order to promote an enhanced reliability and to promote adding additional generation onto the system because the current system, as presently configured, was not sufficient to manage the amount of renewable energy that is going to be required. So go ahead.  I have a clarifying question about whether there's this Mansfield test and then there's special circumstances. Right. And the way you describe special circumstances sounds a lot like what the Mansfield test is getting at. Yeah. In some instances. So the Mansfield test, I think that the, I think the petitioners have slightly misapprehended it. It's not a standard test that the commission will always apply when the question of cost allocation arises. It is a particular, it's a sort of rubric or methodology for ascertaining whether or not particular assets should, the costs of particular assets should be assigned directly to a particular customer. And this is not, this is a very big project. This is not a small project. In general, that's where the Mansfield test has arisen is when there are small projects that look like they are really intended to benefit a particular customer. It's never been used to exclude one or a subset of customers from otherwise rolled in rates. That would, it's sort of the opposite. It seems to be what they're asking for here. Yes, it is the opposite. And it's actually, it's actually sort of the opposite of what the petitioners have been driving at in the FERC proceeding where their principal argument seems to have been that the cost should actually be allocated more widely, not more narrowly. But the Mansfield test is a test for allocating costs more narrowly. So as for the particulars, yeah, they did argue, they did advance these three arguments as to why special circumstances exist. But fundamentally they don't wash because they are connected to the public service system and they receive transmission service from public service and the power pathway is designed to enhance that service. So the fact that they're not directly connected to a particular piece of hardware is, is not relevant. The fact that there is a mountain range in between the facilities and their customers is, is also not relevant at least for purposes of ascertaining whether the costs of the project should be rolled into rates or not. Make sure we don't have additional questions for you. Thank you. Mr. Good morning. May please the court. I'm Daniel skis counsel to intervener, Excel energy services and supporting the respondent commission. In this case, the petition should be dismissed for two reasons. First, both of the arguments raised by the petitioners are barred by the federal power act. Neither argument was raised on rehearing priving the commission of an opportunity and a fair opportunity to address any of those claims at the agency level before the petition was brought to the court.  And the petitioners have failed to demonstrate that the existing transmission rate is unjust or unreasonable, which they were required to do as complainants, bringing this complaint under section two or six of the federal power act. Expanding on that last point.  I would note that it was the obligation of the petitioners to show that the power pathway is not integrated, which case the commission would then be able to make a finding. They failed to do so. They failed to raise the issue. And in fact, the ways in which the project was described in the underlying proceedings suggested that, you know, high voltage, 345 KV, 560 mile loop transmission facility. That would be part of the bulk networks, both power system network that PSCO operates gave no reason to believe that integration was at all at issue. Second petitioners have failed to show that their allocation of costs as network customers of the public service company of Colorado are not just unjust or unreasonable as discussed in the record. They're allocated approximately 0.5% of the costs of public service companies, transmission service that includes point about 0.5% of the costs of these facilities that are at issue. And it was their burden as a complainant under section two or six to demonstrate that that was unjust and unreasonable. They failed to do so. Five from your perspective, but it's a 114% increase from their perspective. Is there sort of some point at which a generalized reliability benefit would be insufficient to justify, you know, pretty dramatic increase in cost. So the cost causation test is what would apply there. And it depends on determining whether or not the benefits are roughly commensurate with the costs that are being imposed. And as this court found in the 2014 South Carolina public authority case, public service authority case, the presumption of benefits to all the members of an integrated system is something that the court has repeatedly relied on and here. So in response to your question, your honor, we would look at what the benefits are, what the costs were resulting and what the whether or not that was roughly commensurate. And here they unquestionably were the public service company of Colorado Excel energy services submitted a detailed affidavit saying here, all the specific engineering benefits, you know, including things like increased resilience access to renew reserve resources, increased reliability. And that was unrebutted on the record below the commission relied on that as well as relied on their own findings on the review of the evidence to conclude that there was no reason that no, that the petitioners and the complainants below had never demonstrated a reason to find that the existing rate was unjust and unreasonable. And as a result, we would urge the court to dismiss the petition. Thank you. Counsel. Thank you, your honor. Swivel. We'll give you the two minutes and rebuttal you asked for. Thank you. Thank you. Thank you. Your honors with our focus on Colorado city, special circumstances, looking at Excel's Gilbert Flores affidavit, giving it its most generous reading. It fails on the second, third and fifth Mansfield factors. It does not tell us that the power pathway operates by directionally. It does not advise whether the power pathway provides service only to PS go, or also to other transmission customers. And it does not advise whether an outage on power pathway would affect the larger transmission system. And all of that is it a joint appendix three 59. So what we've got is FERC's record of evidence, which lacks the necessary evidence for just and reasonable rolled in transmission rates for this 114% increase. This wrong can be remedied with the remand because it will allow FERC to either make the two findings required by its longstanding precedent or provide a reasoned explanation, why it departed from that longstanding precedent and maybe give us guidance for the future or for could even reopen the record of evidence so that the parties may provide all of the evidence necessary to make the necessary findings so that this monopoly in that, I mean, all utilities operate as a monopoly, right? So that this monopoly is regulated so that its rates are just and reasonable, particularly for these Colorado cities, which are not for profit. They simply pass the costs on their customers will experience rate shock of 114%. Thank you. Thank you. Counsel, thank you to all counsel. We'll take this case under submission.
judges: Srinivasan; Garcia; Edwards